ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* BRAGG.

Opinion delivered June 15, 1901.

CARRIER—FRIGHT OF PASSENGER—EXCESSIVE DAMAGES.—Through the unintentional negligence of defendant's trainmen, plaintiff, with two small children, was put off a train on a dark night at a place separated by a fence and cattle guard from the crossing where they wished to alight. A friend saw her alight, and after the train passed assisted her across the cattle guard. She was familiar with the locality. *Held,* that nervous prostration and permanent ill health caused by fright on discovering that she had to cross the cattle guard was not the natural and probable consequence of defendant's negligence. *Held,* also, that a verdict of $1,000 for the actual inconvenience suffered was excessive.

Appeal from Nevada Circuit Court.

JOEL D. CONWAY, Judge.

### STATEMENT BY THE COURT.

Mrs. Emma Bragg, who lived at Gurdon, Arkansas, on the night of November 26, 1897, took passage on one of the Iron Mountain's trains from Gurdon to Beirne, a small village and station on the same road, about four miles south from Gurdon. She

was going on a visit to her father, who lived at Beirne, and had with her two children, of whom one was about three years and the other about nine months of age. After she got on the train, she walked back and took a seat with her two children in the chair car. When the train going south stopped at Beirne, the engine and front coach were opposite or near the depot, but the chair car in which Mrs. Bragg rode was several coaches away. There is a public crossing some forty or fifty feet north of the depot. North of this crossing the railroad track is enclosed by a wire fence, and this enclosed track is separated from the crossing by a cattle guard. Mrs. Bragg was assisted by the porter, and alighted from the front end of the chair car, which was standing on the enclosed track north of the public crossing. Mrs. Bragg supposed that she was getting off at the crossing, but after she got off the brakeman said to her: "Here is the cattle guard. You will have t ' get across that before you get to the road." She then asked him to take her back on the train, but she did not know that he heard this request, for the train had commenced to move, and did not stop. She could see the depot by the light of the train, but after the train left she says there was no light there. On realizing that she was left in the dark, with the cattle guard between her and the crossing, she says that she was frightened very much. But in a minute or two she saw two persons approaching, who proved to be a Mr. Oglesby and his son, who knew Mrs. Bragg, and, seeing her alight from the train alone with her children, had gone to assist her. They assisted her to cross the cattle guard, and accompanied her to her father's house, about three hundred yards away. She made no complaint to them of fright or injury, but afterwards claimed that her health was permanently injured by fright from being put off the train away from the depot and crossing, and brought this action to recover $10,000 as damages. On a trial, there was a verdict and judgment in favor of the plaintiff for $1,000, from which judgment the company appealed.

*Dodge & Johnson,* for appellant.

There can be no recovery of damages for mere fright or mental shock, unaccompanied by any personal or physical injury. 151 N. Y. 10; 60 Fed. 552; 85 Ill. 331; 1 Cush. 451; 6 C. C. A. 432; 6 Nev. 224; 60 Fed. 557; 25 Ia. 268; 105 U. S. 249; 176 Ill. 401; 62 Ill. 313; 85 Ill. 11; 47 L. R. A. 324; 168 Mass. 485; *id.* 216; 64 Ark. 544; 65 Ark. 182; 67 Ark. 123.

*Scott & Jones,* for appellee.

Since the objection here raised to the appellee's cause of action —that there can be no recovery for mere mental shock—was not raised in the lower court, it cannot be considered here. But damages are recoverable for such an injury as in this case. 44 Pac. 322; 50 N. W. 1034; 94 U. S. 469; 2 W. Bl. 892; 2 Sedg. Dam. 642; 26 Exch. Div. 428, 442; 13 App. Cas. 222; 1 Strobh. 525; 29 S. E. 905; 50 N. W. 1034; 18 R. I. 791; 25 S. W. 1032; 25 S. W. 953; 47 Minn. 307; S. C. 50 N. W. 238; 111 Ala. 135; S. C. 18 So. 565.

RIDDICK, J., (after stating the facts). This is an action against a railway company by a female passenger to recover damages for being put off at a place away from the station. It is evident, though, that she was put off near the station, and only a few yards from the public crossing where she wished to alight. But she was frightened, she says, by reason of the fact that it was dark, and that a cattle guard separated her from the crossing. Now it is doubtless true that the employees of the train were guilty of carelessness in putting off the appellee and her young children at night at a place where they would have to pass the cattle guard before reaching the depot or public crossing. If she or her children had been injured in attempting to pass the cattle guard, it would have been entirely just to have held the company responsible for the damages suffered. But no such injury followed. A neighbor saw them alight, and went to them at once, and assisted them to cross the cattle guard, and to reach their destination in safety. Admitting that the plaintiff is liable for the inconvenience caused by putting the plaintiff off in the enclosed part of the railroad track, so that she was compelled to pass a cattle guard at night, this by no means justifies the judgment for $1,000 rendered in her favor, unless the company is responsible for the consequences of the fright and nervous shock which she claims to have sustained, and which, according to the testimony of her father, a physician, resulted in excessive nervous prostration, and in permanent loss of health. Plaintiff, indeed, bases her right to recover in this case, not on any immediate physical injury suffered by reason of the negligence of the defendant, but upon fright and subsequent prostration and ill health caused by the fright. But the right to recover for a physical injury resulting from fright or mental anguish

only would seem to depend on whether a recovery could he had for such fright and mental anguish.

We held in a recent case that damages could not be recovered at law for mental pain and anguish unaccompanied by physical injury and caused by unintentional negligence. *Peay* v. *Western Union Telegraph Co.,* 64 Ark. 544. And in a case where the law allows no recovery for the mental anguish or fright it would seem logically to follow that no recovery can be had for the consequences or results of the fright; such consequences, as stated by the court of appeals of New York, going merely to show the degree of the fright and the extent of the damages. *Mitchell* v. *Rochester Railway Co.,* 151 N. Y. 107; *Spade* v. *Lynn & Boston R. Co.,* 168 Mass. 285.

But we need not go into a discussion of the reasons for such a rule, for, waiving the question as to whether it would apply to the facts of this case, we think that the claim of plaintiff to recover for the sickness and loss of health alleged to have been suffered by her must be denied upon other grounds. It is a fundamental rule of law that to recover demages on account of the unintentional negligence of another it must appear that the injury was the natural and probable consequences thereof, and that it ought to have been foreseen in the light of the attending circumstances. *Scheffer* v. *Railroad Co.,* 105 U. S. 249.

Now, plaintiff was not ejected from the train. She alighted of her own volition, being assisted by the employees of the company. Through the unintentional carelessness of one of the employees of the company, she was assisted from the train, not at the crossing where she wished to alight, but a few yards away, at a place separated from the crossing by a fence and cattle guard, thus compelling her to pass over the cattle guard to get to the crossing. Plaintiff was not put off in a wilderness, but in a village where others could have been called to her aid, if needed. She was not a stranger.in the village. Her father lived there, and her own home was only a few miles away, and she had been there often. She was, on this occasion, traveling to this village, and, as before stated, was put off only a few yards from the crossing where she desired to alight. She knew where the depot and the crossing were, and the only trouble was the cattle guard between her and the crossing. But there were others at or near the depot when she alighted. One of them, who testified as her witness, said

that he was only 30 or 40 feet from her when she alighted from the train; that he recognized her, and went to her immediately, so soon as he could pass the intervening fence and cattle guard. Under these circumstances, we are unable to see any reason why the plaintiff should have been so much frightened. If any fright existed, it must certainly have been over in a minute or two, when assistance arrived. We therefore feel compelled to hold that the long train of physical ills of which she complains was not the natural or probable consequences of defendant's negligence. No prudent man, knowing all the circumstances, could have foreseen such consequences; and the defendant, under the rule above stated, is not responsible for them.

It was, no doubt, inconvenient to have to cross the cattle guard. Considering that it was at night, and that plaintiff was a woman, and had with her two young children, there was probably ground for the recovery of something more than nominal damages in this case, to cover the actual inconvenience and injury sustained. But, under the view we take of the law, the verdict is clearly excessive, and based on matters for which the defendant is not liable. The judgment is therefore reversed, and a new trial ordered.