No. 20,371.

GUS NORRIS, *Appellant,* V. ROSS TOWNSHIP, *Appellee.*

SYLLABUS BY THE COURT.

DEFECTIVE HIGHWAY — *Frightened Horse — Proximate Cause — Petition Failed to State Cause of Action.* In an action against a township to recover damages for injuries alleged to have been caused by a defect in the highway, it is held that the petition fails to state a cause of action, for the reason that it shows the proximate cause of plaintiff's injury was the frightening of his horse and not a defective condition of the highway.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed June 10, 1916. Affirmed.

*Charles Stephens,* and *E. M. Tracewell,* both of Columbus, for the appellant.

*F. W. Boss,* of Columbus, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In this action plaintiff sued to recover damages for injuries alleged to have been caused by a defective highway. The court sustained a demurrer to the petition, from which ruling the plaintiff appeals.

The highway in question runs east and west. The petition alleged that for several weeks prior to plaintiff's injury a culvert in this highway had been allowed to remain out of repair, so that persons using the highway were obliged to drive around the south end of the culvert, where the ground was about two and one-half feet lower, and that during several weeks travelers had continuously used and made a well-beaten path around the low place and up the embankment to the traveled portion of the highway immediately east and west of the culvert. It is alleged that on the same day plaintiff was injured the township sent its agents and employees to remove the culvert and construct a new one of concrete, and in preparing for this they placed a pile of dirt just south of the old culvert and in the north part of the traveled way around the place, and also placed just west of the culvert a concrete mixer, which they covered with a canvas so insecurely fastened that it flapped in

the wind; that on the evening of that day, when it·was too
dark for him to see an object clearly, he was traveling over the
highway in a top-buggy "attached to a kind, road-worthy
horse, going west"; that his horse took the traveled way in the
well-beaten path "used by vehicles traveling said road." The
petition then proceeds:

"When his buggy, so drawn by said horse, reached a point about
opposite said culvert the north front wheel of said vehicle ran onto and
over said pile of dirt which defendant, its said officer, agents and em-
ployees, had on that day placed in said traveled way; that when the
north back wheel of said buggy ran up onto said dirt and again tipped
said vehicle toward the south, plaintiff looked down, as said hind wheel
passed down off said dirt, to see what was causing such tipping of his
vehicle, and while in this position the wind from the north flapped the
south part of said canvas toward his horse in such a way as was likely
to and did greatly frighten same; that when said horse took fright it
lunged forward and out of said low place in an angle against and onto
said high ground, at said defective place in said highway, so that the
right wheels of said buggy went up onto said high embankment before
the left wheels touched same, thereby causing said plaintiff to be thrown
over toward the left·side of his buggy in such a way that he lost his
balance in the buggy which caused the lines to slip in his hands and he
thereby lost control of his horse which ran to the intersecting section
highway just west of said culvert and swung quickly to the south thereon
in such a way as to throw this plaintiff, violently and forcibly, against
the ground."

After enumerating the "bones, muscles, ligaments, tendons,
tissues, and nerves" which were torn and strained, and the
other injuries to plaintiff, the petition prays for damages in
the amount of $20,445 and costs, stating that "the proximate
cause of all of which was the defective condition of said travel-
ing way, from said low part to said high part west of said cul-
vert, which caused him to be thrown about in his buggy and
the lines to slip in his hands and the consequent loss of control
of his horse, in the absence of all of which his injuries would
not have been by him received."

It seems that the first petition, to which this one is an
amendment, contained no reference to the low place at the
south end of the culvert, but predicated a right of action
solely upon the presence in the highway of the mixer, the
canvas, and the pile of dirt, and alleged they were the cause of
the injury. Because the township trustee could not have had
five days' notice of these conditions, the court sustained a de-

murrer to the petition, and the plaintiff attempted to "mend his hold" by alleging the existence of the low place, "the high embankment," and the slipping of the lines in his fingers when he lost his balance by the swaying of the vehicle. The abstract sets out the opinion of the trial court, which shows that the demurrer was sustained as to the amended petition on the ground that the proximate cause of the injury was the frightening of the horse by the flapping canvas, and, since the petition shows that the concrete mixer and canvas were placed there on the same day, or the day before the accident, the township trustee could not have had the five days' notice required by the statute. The opinion comments, too, on the fact that there is nothing in the petition to show that the injury might not have occurred if the alleged defects of the embankment had not existed, because it alleges that the travel around the culvert had created a well-worn way up the embankment. The opinion shows that the trial court was also convinced that two causes contributed directly to the injury: the frightening of the horse, and the turn in the highway a hundred rods west, where it is not alleged there was any defect.

An action of this kind can be maintained against a township only by virtue of the statute (Gen. Stat. 1909, § 658), which requires that the trustee must have had five days' notice of the defect which caused the injury, otherwise the township is not liable. Therefore, the negligence of the officers and employees in permitting the concrete mixer, with the unfastened cover thereof, or the pile of dirt, to remain in the highway adds nothing to plaintiff's cause of action. The road around the culvert was a temporary one. A two-and-one-half-foot depression at the end of a culvert is a common thing, and the approach up the slight embankment was a well-beaten path worn by continual travel for several weeks. Whatever the sharpness of the incline, it appears not to have been so steep or abrupt as to overturn the buggy when the horse, frightened at the flapping canvas, lunged forward. The pile of dirt left there that day had already twice tipped the buggy as first the front and then the rear wheel passed over it. The plaintiff looked down to see what caused the tipping, and while he was in this position the horse took fright at the flapping canvas,

lunged forward, and jostled plaintiff so that he lost control of his horse.

We think the trial court was correct in holding that the petition fails to state a cause of action. Where the question of proximate cause arises on demurrer to the petition it is necessarily one of law for the court. (*Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338; *Gas Co. v. Dabney*, 79 Kan. 820, 102 Pac. 488; *Eberhardt v. Telephone Co.*, 91 Kan. 763, 139 Pac. 416.) The proximate cause of the injury was the frightening of the horse, and not the condition of the highway. In *Railway Co. v. Bailey*, 66 Kan. 115, 71 Pac. 246, where a horse became frightened at escaping steam and ran upon a pile of sewer pipe in the street, it was said:

"The proximate cause of the injury, that without which it would not have occurred, was the frightening of the horse. This stood first in the line of causation." (p. 122.)

(See, also, *Eberhardt v. Telephone Co.*, supra.)

The judgment is affirmed.