BEN M. HOGAN & CO. v. KRUG.

5-2549                                                  351 S. W. 2d 451

Opinion delivered December 4, 1961.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*Catlett & Henderson,* for appellee.

NEILL BOHLINGER, Associate Justice. The appellant, Ben M. Hogan & Company, is a partnership which occupied a piece of leased ground in Pulaski County at the intersection of two County Roads which are known as the Carmichael Road and the County Line Road. The Carmichael Road runs east and west and the County Line Road runs north and south. Upon the leased premises the appellant had for more than eight months prior to June 11, 1960, operated a gravel business where it crushed, assembled and maintained a stockpile of gravel which was from 25 to 30 feet high and, according to some witnesses, extended west from within three or four feet of the western edge of the County Line Road for approximately 100 feet.

From this business and stockpile of the appellant, Fred R. Rood, who was a defendant in this action, was engaged in the business of hauling gravel from the appellant's location. The operation of Rood was that of an independent contractor, independent of the appellant. Among other employees of Rood was a truck driver, one R. G. McNeeley, who was also a defendant in this case in the lower court.

There was an exit road from the property occupied by the appellant that divided into two prongs shortly before its junction with the County Line Road. The plan of operation of the appellant's business seems to have been that whenever it was planned to load a truck, the operator of the blender or loading plant would sound one blast of a whistle. When the truck was loaded, two blasts were sounded and the truck would then move out from the loading station.

When the loaded truck moved out from the Hogan loading point, Rood and the driver were on their own

and moved without direction or control of the appellant. While operating upon this line of procedure, McNeeley moved away from the loading station and taking a fork in the exit road, which had been suggested by Hogan's employees as a means of avoiding a mudhole in the County Line Road, McNeeley drove his truck upon the County Line Road where it struck a car driven by Mrs. Lea Nevin, the impact of the collision being such that Mrs. Nevin, Larry Krug and Mrs. Eugenia Krug, the occupants of the car and appellees here, were gravely injured.

To recover damages for their injuries the appellees filed their complaint in the Pulaski Circuit Court against Hogan, Fred Rood and R. G. McNeeley, alleging Rood and McNeeley were negligent in operating the truck and semi-trailer at an excessive rate of speed, failure to keep a proper lookout for persons and property rightfully using the County Road; failure to keep the truck and trailer under proper control; failure to stop the truck and trailer before entering a public highway, and failure to yield the right-of-way to the automobile operated by Lea Nevin.

As against the appellant, Hogan, negligence is asserted in the following items: The assembling and maintaining of a stockpile of gravel 25 feet high and 35 feet wide extending from a point 40 feet west of the road up to the boundary of the road which completely obstructed and cut off the view of the appellee and prevented her from seeing the Rood and McNeeley truck; that Hogan had failed to cut and remove trees, bushes and vines which had grown on the leased property of the appellant in such a manner that it had obstructed appellee's view to the west and prevented her from seeing the Rood-McNeeley truck and trailer; that the appellant had negligently failed to maintain a guard or flagman where the haul road intersects the County Line Road; that it further negligently failed to erect and maintain a sign, signal or other device of any kind, character or description to warn operators of vehicles on such road of the

intersection of the haul road and the County Line Road; failed to erect and maintain signs, signals or other devices along the County Line Road that trucks or other vehicles were operating on the haul road which intersects the County Line Road; that the appellant had further negligently failed to warn and instruct other persons hauling of the operation of the gravel plant as to the danger in driving onto the highway without first stopping to ascertain that such move could be made safely.

Prior to the calling of the case for trial the appellees dismissed their complaint as to Fred R. Rood and R. G. McNeeley, the dismissal being with prejudice as to these defendants but expressly reserving their action as to the defendant Hogan. At the hearing on the motion to dismiss as to Rood and McNeeley there were introduced covenants not to sue executed by the appellees. A number of points are argued by the appellant for a reversal of the judgment found against it by the Pulaski County Jury in this case but for the reasons hereinafter stated we find it necessary to consider but one here.

Considering first the allegations of negligence against the appellant for failure to maintain a guard or flagman near the point of intersection of the haul road and the County Line Road; to erect and maintain signs and signals to inform operators of vehicles on the County Line Road of the operation of the gravel plant and the exit from the gravel property over the haul road; failure to warn and instruct the haulers from the gravel property of the danger of driving onto the highway before first stopping to ascertain that the move could be safely made, it is clear from the record before us that the operation of Rood and McNeeley was independent of Hogan in every respect and that when the Rood trucks had been loaded and moved away from Hogan's plant, Hogan's entire connection with the truck and its load was severed in every way. There was approximately 100 feet between the loading plant and the County Line Road. The loaded trucks could have stopped at any point therein and never gone onto the County Line

Road as far as Hogan was concerned. McNeeley, being Rood's employee and not Hogan's, no duty devolved on Hogan to instruct him in the manner in which he should operate the truck.

Neither does it appear that there existed any necessity for Hogan to leave his own premises for any purpose. So far as we know, Hogan's use of the County Line Road was but casual and since he was not hauling over it as a part of his business, we fail to see where any duty devolved on him to place a guard or warning signs or devices of any kind. If such a duty devolved on any person it was on Rood who was the one making use of the road. We find no merit in these allegations of negligence.

That brings us to a consideration as to whether or not the appellant was negligent in maintaining on its property a gravel pile which it is alleged obscured the vision of the appellee as she drove the car toward the intersection of the haul road and the County Line Road where the accident occurred. This lessening of her sight distance by the gravel pile and the presence of growth of various kinds is alleged by the appellees to have brought about the accident.

The piling of the gravel on his own property by Hogan was not of itself negligent and the only time that the gravel itself could have brought about an injury would have been if Hogan had negligently piled it on the County Road in such a way that a car might strike it or had it been stacked so close to the County Road that part of it had sloughed off and damaged vehicles or persons on the County Road. So far as the gravel piling is concerned, it could have remained in that spot at that height indefinitely without causing any damage. Therefore it cannot in any way be said that the gravel pile was of itself the proximate cause of the injuries of which the appellees complain.

The law in this cause is stated in Arkansas Law Review, Vol. 1, p. 152, as follows:

"In determining whether an act of a defendant is the proximate cause of an injury, the rule is that the injury must be the natural and probable consequence of the act—such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act; the act must, in a natural and continuous sequence, *unbroken by any new cause, operate as an efficient cause of the injury.* If a third person intervenes between the act of the defendant and the injury, and does a culpable act, for which he is legally responsible, which produces the injury, and without it the injury would not have occurred, and the act of the defendant furnished merely an occasion for the injury, but not an efficient cause, the defendant would not be liable." [Citing *Gage* v. *Harvey,* 66 Ark. 68, 48 S. W. 898, emphasis ours.]

More succinctly stated the rule is that if a new cause has intervened subsequent to the original negligent act and this new cause is of itself sufficient to stand as a cause of injury, the original negligence is too remote.

Therefore, no negligence attaches to Hogan's piling his gravel on his own land and it is abundantly clear that after Hogan piled the gravel a new cause, which was the hauling of gravel by Rood, intervened and that the operation of Rood's truck and trailer was sufficient to stand as the cause of the injury. Considering a parallel case in *Goodaile* v. *Board of Commissioners of Cowley County et al,* 111 Kan. 542, 207 P. 785, we have a case in which the owners of land permitted high hedges to grow along public roads which crossed at the corner of their property. The hedge obscured the view of one road from the other. A woman driving a horse and buggy along the road approached the crossing and her horse became frightened at an automobile that appeared suddenly at the crossing of the roads, and when the horse ran, the woman was thrown from the buggy and injured. The court held that the owners of the land were not liable for her injuries, saying:

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.

Even if it be admitted that the high hedges were in part of the cause of the accident which resulted in the plaintiff's injury, it cannot be said that they were the efficient intervening cause of the accident. The horse was frightened by an automobile. That was what caused the accident. In *Eberhardt* v. *Tel. Co.*, 91 Kan. 763, 139 P. 416, it was held that a telephone guy wire extending into the public highway was not the cause of an injury to one who was riding in a wagon with her husband, who was driving a span of mules that ran away, and ran into the wire and thereby injured the plaintiff in that action. The latter case is closely parallel to the present one. The proximate cause of the injury to the plaintiff in this action was the frightening of her horse, and not the condition of the hedges. *Railway Co.* v. *Bailey,* 66 Kan. 115, 122, 71 P. 246; *Norris* v. *Ross Township,* 98 Kan. 394, 161 P. 582. The petition did not state a cause of action against the owners of the land."

In the case of *West* v. *Wall,* 191 Ark. 856, 88 S. W. 2d 63, there was before this court a case in which a motor company was arranging the sale of a truck to a partnership of Jacobs and Rose. The brakes on the truck were in very bad condition and Jacobs knew of this fact but he thereafter drove the truck on the public ways at a high rate of speed. In a resulting accident J. T. Wall suffered damages and brought a suit against Jacobs and the motor company who had given Jacobs the truck to try but this court reversed the cause as to the motor company and said:

"* * * The proximate cause of the injury was negligence of Rose upon the business errand for the partnership of which Rose was a member.

As was said by this court in the case of *Pittsburg Reduction Company* v. *Horton,* 87 Ark. 576, 579, 113

S. W. 647: 'It is a well-settled general rule that if, subsequent to the original negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote. The difficulty arises in each case in applying the principle to a given state of facts.'

We think in the proposition before us there can be no difference of opinion upon the matter that Rose's negligence was in itself sufficient to cause the injuries suffered, and necessarily was the proximate cause of them. *Gage* v. *Harvey*, 66 Ark. 68, 48 S. W. 898; *Arkansas Valley Trust Co.* v. *McIlroy*, 97 Ark. 160, 133 S. W. 816.

Therefore whatever may have been the negligence of the appellants, that negligence was too remote and cannot be treated here as a concurring cause. Rose and Jacobs were both machinists, both experts, both knew of the condition of the truck. Neither was connected in any particular with the West-Hornor Motor Company. They were not demonstrating for that company. They were testing the truck for themselves, looking after their own business interests for their own profit.

Many authorities could be cited supporting our conclusions above set out. *Bizzell* v. *Hamiter*, 168 Ark. 476, 270 S. W. 602; *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229; *Keller* v. *White*, 173 Ark. 885, 293 S. W. 1017.''

In the case of *Arkansas-Louisiana Gas Co.* v. *Tuggle*, 201 Ark. 416, 146 S. W. 2d 154, Tuggle brought a suit for personal injuries sustained by him alleging that Arkansas-Louisiana Gas Company and the trustees of the Missouri Pacific Railroad had been negligent; that while he was engaged in unloading a car of tile on the track of the railroad, another car on the track was released and rolled down by gravity and struck the car in which he was working with great force. The allegation of negligence against the Gas Company in this case was that the brakes on the second car had been released by an employee of the Gas Company. It developed during the trial that Hursey was  an independent contractor and

the relationship of master and servant did not exist. In commenting upon the asserted negligence of the Railroad Company in this case, the court said:

"* * * But, assuming that the cars should have been placed farther down the track, such negligence was not the proximate cause of the injury. There was an active intervening cause, that of Hursey in releasing the brakes, and the Railroad Company is not liable for the acts of Hursey who was not its employee. It is said the Railroad Company knew the cars had to be moved. If so, it was its duty to move them and spot them where they could be unloaded. But the mere fact of spotting the cars where they were, assuming that it was negligence to do so, did not cause the injury and could only be said at the most to be the remote cause. In *Booth & Flynn* v. *Pearsall*, 182 Ark. 854, 32 S. W. 2d 404, it was said that, 'in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' In *Pittsburg Reduction Co.,* v. *Horton,* 87 Ark. 576, 113 S. W. 647, 18 L. R. A., N. S., 905, it was said: 'It is a well settled rule that if, subsequent to the original negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote.' So here, if we assume that the Railroad Company was negligent in spotting the car, that fact did not cause the injury, except for the intervening act of releasing the brakes.''

We have examined appellee's authorities and many more and find that none of them support the contention that there was any negligence on the part of Hogan in placing the stock pile of gravel on private property alongside the road. We can find no causal connection between piling the gravel and the accident that occurred between appellee's car and Rood's truck. The gravel pile was merely one of the conditions or surrounding circumstances that were present at the time of the acci-

dent. It was one of the "circumstances" to be considered in applying the rule of reasonable care "under the circumstances" in determining the fault or lack of it on the part of the drivers of the vehicles involved. It was no more a "cause" of the accident than was any of the other conditions present, such as: the underbrush and trees which obscured the view—the dirt and gravel road with less traction for stopping than one of a different material—the hill which did not allow an adequate view down the road—the great distance from the bumper to the windshield of the truck which prevented the driver from seeing down the road without pulling out on it. Certainly we are not going to hold liable every property owner who has a tree alongside the road—the city, county, or state for not providing the most efficient road surfacing material—the city, county, or state for failing to level all hills or straighten out all curves—and manufacturers of vehicles for not shortening truck noses.

The location of the gravel pile and all of these things to which we make reference here are circumstances that should have been considered by Rood and McNeeley in applying the rule of reasonable care.

Neither do we think it devolved upon Hogan to assume that Rood might have hired incompetent or careless drivers or further to assume that Rood's driver would move without the care that devolved upon him in the operation of the loaded truck-trailer.

At the close of all the testimony in the trial court, the appellant moved for a directed verdict which was overruled by the trial court. This was error. The motion should have been granted and this cause is therefore reversed here and dismissed.